May it please the Court, I am Ron Tyler. I represent Goodwin Brodit, the petitioner in this matter. Your Honors, I'd first like to indicate that I will be focusing on the first claim that was presented, and we are submitting on the briefs the second claim. The first claim is that trial counsel rendered ineffective assistance of counsel in failing to even investigate, much less present, evidence that my client did not possess the psychological characteristics of a resident child molester. First of all, in terms of the standard of review, in order to get that out of the way, I believe that this Court's previous holding in Killian controls where here the trial court, well, I'm sorry, not the trial court, rather the state court on collateral review, did not hold an evidentiary hearing regarding and did not, therefore, develop the facts regarding the ineffective assistance of counsel claim. And as such, it wouldn't be possible to have the ADEPA standard, the deferential standard of review, because there were no sufficient facts adjudicated on the merits. And as such, under Killian and under Weaver, which is cited in Killian, it is appropriate for this Court to instead look at the district court findings, applying a de novo standard for the legal aspects. What effect, if any, does the Supreme Court's recent discussion in Andrade have as we review a claim that a state court was mistaken? And what effect does that have on the idea that we review de novo? I certainly looked with interest in Andrade, Your Honor, and I believe that it has no impact here. The reason that I say that is because, again, there was no, at the state level, there were no evidentiary decisions that were made at all regarding the claim. And so Killian is what will control. Is there anything in the Supreme Court's jurisprudence that requires that there have been an evidentiary hearing as distinct from an analysis by the court of the claim in some other fashion? Well, I think that what is required is to, as the district court found, in order to analyze under Strickland, whether it's the performance prong or the prejudice prong, it's necessary to have enough evidence to conduct that analysis. And if there's not enough evidence to conduct the analysis, then it can't properly be done, and therefore there's nothing to give deference to. And so that's why when I read Andrade, the Andrade case, on the other hand, was factually distinct in that the state court had conducted the necessary factual determinations. In Killian, that was not the case. There had not been any factual. It's a little odd because the state court essentially speculated with regard to the fact that there could be a tactical reason, right? And then there was a hearing, and then the district court essentially concluded in a way that the state court's hypotheses about the tactical reasons were correct, right? In other words, she felt that the hearing substantiated, simply proved up what the court of appeals was speculating about. So unless you're arguing about the details of the fact-finding, it doesn't matter that the facts matter a lot, right? In other words, what I'm saying is that the theory on which she ultimately, the legal theory on which she ultimately denied the petition was the same legal theory on which the court of appeals relied. Well, it was, she was still looking at Strickland as the. No, but at a lower level of detail than that. In other words, at a level of detail having to do with why the trial lawyer made the decision he made, and indeed some of the same reasons. It just happened that now we have a record about the same matters that the court of appeals was essentially speculating about. So while we may not have been able to uphold what the court of appeals did by itself because it didn't hold a hearing, there seems to be some halfway house here where the facts, as to the facts, certainly we can't rely on the court of appeals. But as to the legal theory, we ought to be able to because it's the same legal theory. Well, the legal theory, I understand the court's question. The legal theory at the court of appeals, at the state court of appeals was speculating, they speculated that counsel may have had sufficient tactical reasons for the decision not to conduct an evaluation or present such evidence. And it's correct that the district court, in taking evidence, made factual findings that there had been certain tactical decisions that were made. But at this point, because the district court made those findings, I think it's appropriate that this court is reviewing the district court's findings, not the – And so we're reviewing them what, for clear error? Reviewing the – that's correct. Actually, one thing I think is interesting. Do you think that's different if we were reviewing the state and we were reviewing it for reasonableness under AEDPA? Well, as it turns out, after Andrade, yes, it would be different. Well, although we're not standing arguing that the district court's factual determinations were clearly erroneous. We're arguing that the legal decision in applying Strickland was incorrect. But I do think that the – of course, after Andrade, that an objectively unreasonable application is apparently distinct from a clearly erroneous application. So it would be – if this case is controlled by Andrade, then it would require a conclusion that the state court decision was objectively unreasonable. Here, I think that instead, because the state court did not engage in any insufficient fact-finding for either prong, it is the district court decision that has to be reviewed and that the clearly erroneous standard is the proper standard for the facts and de novo for the law. So, I mean, assuming that that's the case, why does that help you, Annie? I – you had the lawyer get on the stand and he gave what sounded to me like a pretty plausible reason for failing to pursue this line. And what he said is that he was afraid that other damaging stuff would come in. Now, maybe you would have made a different decision. Maybe I would have made a different decision had I been the lawyer. But Strickland allows for quite a bit of leeway for reasoned judgments of counsel. And this doesn't sound to me like this was a lawyer who just forgot or, you know, didn't – wasn't, you know, aware of this here. It sounds to me like this was a judgment he made. Why – so getting past the question of what standard we apply, even sort of the standard most helpful to your case, why isn't – you need to defer to the district court on this. The reasons that he proffered and the reasons that were listed in the district court opinion were either not reasonable or were not well-informed. In terms of his reason – his fear about the introduction of the affair, that's not a well-informed basis for his decision not to at least pursue the investigation or – and potentially to put on the evidence. He could have, as we argued below, he could have sought a motion in limine in order to make – in order to determine whether or not this would be evidence that would come in or not, rather than simply having this speculative concern, well, maybe it would come in if we introduced the stole evidence. Maybe it would – maybe it would not. You know, I'm not that familiar with state procedure. I assume – I often assume it's just like in federal court, but I'm often surprised to find out it's not. You say he could have done a motion in limine. I don't know. Is that the case? Well, what we know is – I just don't know. Indeed, motions in limine are part of state practice. In this case, although I cannot at this moment – It sounds highly – sort of a highly hypothetical motion in limine. It's one thing to say, well, we're going to have an objection to a particular kind of testimony. Let's take it up before we get to the jury. Here it would be almost like saying, well, if I pursue this line of defense, will the court hypothetically allow this kind of testimony to come in? I don't know how pressed to understand how a court could make that kind of ruling on a purely hypothetical record. Wouldn't a judge, a charged judge, say, look, I need to see what your experts or what you guys present, and once I know concretely what you're going to present, I can rule on whether something else is admissible in rebuttal. But I'm just having a little difficulty understanding how this issue could have been resolved by motion in limine. I think it could have been resolved by trial counsel making an offer of proof, by trial counsel including – trial counsel could have brought the expert for purposes of making that offer. What you're saying essentially is he should have done the investigation, had the studies done, and had an expert report, and then gone for the motion in limine, not gone for a hypothetical motion in limine. That's correct. That's correct. That is what I'm arguing. And that then would have provided him with an informed basis for the decision. I think also that his decision to not introduce – to not seek to introduce that evidence based on the fear about the affair is arguably not a reasonable decision because the affair, in fact, could have been used – Well, that can't be. I mean, it has to be – in other words, that's a judgment call, right? I mean, that's what lawyers are for. If it was, in fact, going to come in, the judgment about whether it was a good thing or a bad thing that came in is something that a lawyer has to be able to do, right? Well, that's – certainly I understand that that was the decision below, is that that was considered a reasoned decision. But I think in this case, given that the – given the state of the evidence, where the allegations are of this ongoing conduct with a 7- or 8-year-old, the fact that this is – that there is actually contemporaneous evidence of adult behavior, I think was significant evidence that, indeed, it would have made sense to have before the jury. So I actually don't think that that's a reasoned decision to make. But if reasonable lawyers could disagree, then it's not a Strickland problem. So that just doesn't seem – I mean, the other point has some possible merit, but – I agree that the stronger point is that this was not a well-informed decision. I think that the second fear that was raised, the fear of potential introduction of evidence of Mr. Broditz's membership in an organization that in part looked for lost children, that it's hard to see that as a reasonable basis for concern, given that the theory of defense was that he was a good uncle, a caring person, somebody who did care about his nieces and nephews. That membership evidence, if anything, would be consistent with the theory of defense. I'm sorry. Go ahead and finish before I ask my question. To me, that simply seemed to be a post-hoc rationalization for the decision not to present the stole evidence. I would like you to address the question of prejudice, because it seemed to me that there were some very strong defenses mounted, emphasizing the inconsistency of the victim's testimony and in other ways calling into question the case, giving alibis for some of the alleged incidents and so forth. How could this evidence that you say should have been developed have made a difference in the face of the defense that was mounted? Well, as the Strickland expert testified below, in a case of this nature where the state's evidence was potentially weak, it was very important to give the jury, where it became a credibility determination by and large, it was important to give the jury the comfort factor in knowing that they would be making the right decision in acquitting Mr. Broditz. And so the prejudice here is particularly, what's important in looking at the prejudice, is evaluating the relevant strength or weakness of the state's case. That's Johnson versus Baldwin from this court, which indicates that that's something that has to be considered. At the time that Mr. Broditz was sentenced, the judge acknowledged that this was, as I recall, that this was not the strongest case. And certainly the district court below acknowledged that this was not the strongest case. So it was important in a case of that, where essentially you have the statements of the complaining witness, and then you have seven different witnesses who then come on simply to repeat her hearsay statements, where there's no medical evidence whatsoever. Under those circumstances, to have the psychological profile information or evidence, rather, was key. What did the attorney say with regard to why he didn't take the emotional lemonade route? It seems to me that your ineffective assistance claim really boils down more to a complaint about not going for emotional lemonade than to a complaint about the stall evidence, because that's the reason why he says he didn't introduce the stall evidence. So really that's where we have to focus. And what were the reasons he gave for that? At the evidentiary hearing, he indicated that he was concerned that he would not receive a ruling, because that he would not receive a ruling on such a speculative issue, I think is the way that he described it. That was the primary reason that he gave. He also indicated that when asked about the lack of any evidence of motions and lemonades filed whatsoever, that in state practice it was, in his view, not unusual for there to be no such evidence. Because he described a sort of gentleman's agreement situation, which actually operated here because the affair never did come in. There was apparently some – he was suggesting that there was some implicit agreement among counsel not to introduce the affair. He suggested that that was – well, he, as I recall, indicated that that was his general practice and that that may have been the case here. Whether or not that was the case is another matter altogether, because I don't think the way the evidence came in there would have been a basis for the affair evidence to occur anyway. I see that I only have about four minutes left, so I'll reserve the rest of my time for rebuttal. Thank you. Thank you. May it please the Court. My name is George Hindle, and I represent Respondent Worden. I guess I'll start off by addressing the points that were raised in the opening argument. First of all, as far as the standard of review, we've taken the position that the AEVPA standard should still apply in this case because we do have a reasoned state court decision on the merits rejecting the ineffective assistance of counsel claim, as well as the due process claim. But it's reasoned without facts. Well, I think it might help if I explained the procedural posture of this in the state court. When he filed his state habeas petition, the threshold question for the Court of Appeal at that point was whether the petition alleged facts, which if proved, stated a prima facie case of ineffective assistance of counsel. And so the reason that the California Court of Appeal decision is couched in terms of trial counsel may have had reasons was that he never alleged whether counsel had tactical reasons for not presenting this evidence. Ordinarily, if you file a state habeas petition, you would attach a declaration of counsel explaining his reasons for what it is that he did, or sometimes alternately, habeas counsel will attach a declaration stating either that I spoke with trial counsel and here's what he told me his reasons were, or I tried to speak with trial counsel and he just wouldn't talk to me, and so I can't allege what his reasons were. But why would he do this? Because the reasons don't help him. So why would he say, you know, it seems to me he makes the claim and it seems if there is a factual basis. Yes, but in this case it would be up to the State to find a lawyer and get something from the lawyer or for the Court of Appeal. Can the Court of Appeal order an evidentiary hearing? Yes. How do they do it? If they felt that he had established a prima facie case of ineffective assistance to counsel, then they would issue an order to show cause and either send it – typically it would be sent to the trial court either as a reference hearing where the trial court would make specific factual findings and the Court of Appeal would reserve for itself the legal determination of whether there was ineffective assistance, or else it would be sent back to the trial court for an evidentiary hearing and the trial court would actually decide both the facts and reach a legal conclusion and then he could appeal that decision back to the Court of Appeal. This didn't happen here. It could have happened. It didn't happen. That's correct. Which gets us back, I think, to Judge Breslin's question. In this case, the question is, if we are to make a legal decision, rather, there was no factual – I mean, the Court of Appeal comes up with a hypothetical reason. Do we really – or ought we to defer to it when it's a – it's a legal analysis without a factual basis? I think that was your question, I guess. Yes, that's my question. As I was trying to explain, I think – I think the position of the Court of Appeal was that it was his obligation to make some showing that counsel lacked a tactical reason for proceeding as he did and that he failed to do so and that this was not a situation in which he simply couldn't have had any reason. How can he prove a negative? Well, as I explained, he could either go to the trouble of obtaining a declaration from counsel to determine what counsel's reasons were, or he could explain why it is that he didn't do that. Right, and if he didn't do it, he'd still be in the same position as where he was now. Yes, but at least we would know why it doesn't appear in the record. Yes, but that doesn't do any good. If it's his burden, then it's his burden. If it's not his burden, why does he have a burden of showing why he doesn't have it? Well, his burden is to allege facts sufficient to show ineffective assistance to counsel. Right, but you're acknowledging that one of the things he could have shown would have been that I can't get that information. If that's good enough, then not doing it at all must be good enough, too. I'm not sure that I follow why one follows from the other. Because it's not evidence that there was not a tactical reason to say that I couldn't get anything. In other words, you're acknowledging that it might have been impossible for him to get anything from the lawyer, and it's very likely that that's why he didn't have it. So you're suggesting that, however, if he had attached something saying I couldn't get anything from the lawyer, that would have been all right, but not attaching it is not all right. That's correct. But that doesn't – so if he had the burden, that doesn't mean any burden. I understand. Right. It discharges the burden in the sense that it explains why it is impossible for him to provide the court with the facts. It seems very likely to me that our level of review depends on whether he attached that piece of paper or not. Okay. Well, ultimately, I think it doesn't matter in this case because, as Your Honor pointed out earlier, essentially the legal analysis that the court of appeal went through was the same, even if we concede that it was based on speculation. It turned out, after an evidentiary hearing before the district court, that everything that the California Court of Appeals speculated about was, in fact, the case. Except for this very fine-cut question about the motion on limine. I mean, that's sort of the interesting question, isn't it? I mean, there is an explanation for why he didn't introduce the stole evidence, and the question is whether he went far enough down the line with determining whether his fears were legitimate or not legitimate. And at what point Strickland cuts off and says, you've done enough to determine whether this thing you're concerned about is going to happen or not. That's really where we are in the case. Is that right? Well, right. And I don't think that that is sufficient to establish an effective assistance. I mean, first of all, the position seems to be that you have to go down, that counsel has to go down every avenue, collect all possible evidence, and then make the determination at the last possible minute whether I'm actually going to try to get it in. Well, it probably depends to some degree how important it is. And this seems very important in a case like this. It depends whether this is really likely to be something the case will turn on or won't turn on. Well, our position would be that it wouldn't be, because it's only going to come in. First of all, as far as the motions in limine, I don't see, I mean, counsel testified that he didn't think that there was any way that he was going to get a ruling on this, and also that he didn't think that ultimately there was any way that the trial judge was going to keep the prosecutor from questioning a stole expert about the affair and about the defendant's contacts with children. And I think that's absolutely correct. I don't see how that could possibly, I mean, how the trial court could possibly so restrict the prosecutor's cross-examination of the expert when, under California Evidence Code 721a, there is broad cross-examination of an expert as to the basis for their opinion. Under Federal Rule 403, I believe the California Rules of Evidence mirror the Federal Rules to a large extent. So there must be a mirror to Federal Rule of Evidence 403. 403 is undue prejudice? Exactly. Okay, yeah. The California analog would be California Evidence Code 352. So, yes, there is a state analog, but, I mean, essentially you would be completely tying the hands of the prosecutor. Excuse me. If the expert is talking about his relationship with children or his propensity to have improper contact with children, let's put it that way, why would examining him about having an affair with the mother have any bearing on that or any bearing such as without way, the obvious prejudice from that? I mean, having an affair with an adult person, even though it's a little seamy, having, I guess it's because of family relationship, is really quite different from having, I mean, there are lots of people who have affairs with adults that are, you know, may seem improper or seamy or whatever that would never think of having sex with children. Wouldn't be interested, wouldn't care to know. Right. I think what — I'm sort of wondering, why would the stole expert have been expected to be cross-examined about — why is that something that would necessarily have the prosecutor been allowed to go into necessarily? I think there are two reasons. First of all, there's sort of been this argument from opposing counsel the whole time through this case that this is a very narrow issue and the stole expert is only testifying on this very narrow issue, and therefore, all this other stuff isn't going to come in. I sort of bought it. I sort of bought the argument, so why don't you talk about it? Okay. Yeah, but if you look at the — I sort of see it as a narrow issue. I'm not trying to — Right, right. But if you look at the testimony of their expert at the hearing, he's not looking at this narrowly. He's administering general personality tests to this man and general projective tests. None of the psychological instruments he used are specific to determining whether or not someone is a child molester. He's going into his general background of — If the expert says, look, this is not the kind of guy that would have sex with children, why does the fact that he has sex with adults who happen to be in the family, what relevance does that have? How does that bear on the issue? Well, in this — Again, life teaches that there are lots of people who have what one would call unfortunate affairs with all sorts of adults that they shouldn't, but they would never think of having sex with children. It's just sort of — in my mind, it seems to be — Well, also — It's very wrong, by the way. This is actually sort of a very different thing. Also, there are specific facts unique to this case which I think make it relevant. Okay. And those are — first of all, we're talking about an affair that occurred in secret, behind the backs of other people in the house, at the same time — I think usually affairs mean secret, you know. Okay. Otherwise, it would be so different. At the same time that the defendant is claiming that there's no way I could have had secret sex with the child in the home, he was, in fact, having secret sex with the mother in the home. Well, that would have been a reason to — Okay. That would have been a reason to use it to impeach him as to his testimony that it was secret, but it wasn't done. And with regard to the expert, however, the expert isn't testifying to the facts of what happened in the home, right? He's testifying to — Well, he's not testifying to the facts of what happened in the home, but he is testifying to his opinion as to whether this man's personality is consistent with being a residential child molester. Isn't another point of possible relevance the fact that he did not tell this to the psychiatrist? In other words, in terms of evaluating the psychiatrist's opinion, he, in fact, was lacking a — Right. Even after the fact. You know, the psychologist that we're talking about is the psychologist that interviewed him after the fact, after he'd been convicted. And even then, he didn't admit this to the psychologist when the psychologist was busily questioning him all about his sex life and about his sexual contacts with adult women. I mean, the psychologist did ask him about these things. You know, did you have a girlfriend at the time? Did you see adult women at the time? Okay. These are bases of the psychologist's opinion in this case. Okay. And also, we have other specific facts about this affair, that the mother and the daughter resemble each other, that the mother was claiming that she terminated the affair, that the daughter may have seen them having sex together. You know, the concern of defense counsel that he expressed in the evidentiary hearing was that if the jury found out about this, they're going to think that they could possibly think that, okay, he was having an affair with the mother, the mother cut him off, and then either to continue to have sex or to punish the mother, he then has sexual relations with the child that physically resembles the mother and tries to dress much older than her. Do we have any idea whether that makes sequential sense in terms of the timing of these things? Well, the problem is we don't have really specific facts about the timing of the affair. Right. Other than it happened while they were all living in the home. We have no idea whether that could make sense, in fact. On the current record. Well, I mean, we don't have specific facts to line up the timeline. And also, admittedly, her testimony was somewhat vague as to time, except as to when it ended, and was somewhat vague as to when it began, other than it began sometime while they were all living together at this particular residence. Let's say we don't. I'm sorry. Go ahead. Let's say we don't buy the lawyer's explanation. I'm not saying we don't. I would just like to sort of move on to the analysis, if we can. Let's say we're just not persuaded. What happens next? Do you? You're saying that assuming you're not persuaded by his explanation of his reasons for not pursuing the investigation. Does that then mean that he would have had no legitimate reason, and therefore the decision to not call the expert or not at least pursue the expert would have been a violation of Strickland, or do you have a backup argument? I'm not sure. Does it all hinge on our accepting the expert's explanation as to the defense lawyer's explanation? We sort of look at it and we say, look, we understand what the district court did, but we just think it's clearly erroneous. The lawyer obviously made a mistake here and is covering up. The two reasons he gives are just don't stand up. Let's just say we're there. I just want to know what happens next. Well, I'm a little concerned about it. I mean, the district court made a factual determination that these were the genuine reasons. If you want to fight my question, that's perfectly fine. But we've talked about whether the district court's finding was reasonable. If you want to keep talking about that, that's fine. I'm just saying let's say we get past that and you don't win on that issue. Is that fair? If you prefer, I'm not saying we're going to win. I mean, obviously the other issue is whether there's prejudice or not for not putting this in. But how could there not be prejudice given the fact that this is a part of the case we haven't talked about, but the evidence on the other side was a very strange sort of evidence, a lot of it. It was the little girl testifying, and she testified, you know, not badly. But other than that, there were six people who just basically repeated what she said somewhat inconsistently. And then there was this person who was testifying about her CSAAS, which seemed to be some testimony about why she should be determined credible, which is an odd kind of testimony. And then there was really not much physical corroboration. There just wasn't that much. Well, I would disagree that it's not a strong case. It is true that as in many of these cases, it boiled down to a credibility determination and that there was no medical evidence to corroborate. On the other hand ñ By the way, I just ñ your opponent did an argument, so we didn't get into it. But the part that I find extremely odd is that these six people were allowed to get up and basically repeat her story in a context that was not really a prior inconsistent statement of the traditional kind, because they were all people who heard the story after she had reason to fabricate it, if she had reason to fabricate it. And what were they there for, aside from the hearsay exception? What were they there for? What was the point of them? Well, I suppose that the point of them was to show that she had repeatedly made relatively consistent statements about what it was that happened in this case. I mean, admittedly, that whenever you have a young witness like that, you're going to get some inconsistencies. But I think over time, the fact that she was repeatedly able to give an account that was consistent was ñ bolstered the credibility of the testimony. But in the end, it was nothing but his word against her word. You also have specific facts, like the fact that even though she's nine years old, she's testifying about the fact that after the acts, she's feeling wetness on her buttocks, and that he's wiping it off with a towel, and she thinks it's sweat. I mean, the defense counsel pointed out at the evidentiary hearing that he had a real problem getting around that, because it indicates knowledge of sexual matters that you wouldn't expect in a nine-year-old, and he had no alternate source for it. You also have the fact that she liked the man. There's no credible explanation for why she would be ñ I mean, she hated her stepfather but liked her uncle. Okay? But she accuses her uncle. And even when investigators are confused and are asking her, isn't it your stepfather that molested you, she's, no, it wasn't him, it was my uncle. But your burden is to show that if some credible person, let's assume, got up there and said that this man was not the sort of man who was likely to commit child abuse, that that might ñ wouldn't have had a substantial impact on it. A psychologist would have gotten up there and said, I gave ñ I interviewed him for 90 minutes, and I gave him a few general psychological tests, and based on that ñ Well, we actually don't know. We don't know who did that. That's what this guy did. But what a competent lawyer would have produced, we don't know that. Well, I'm assuming that opposing counsel was a competent lawyer in presenting the best possible evidence he could find at the evidentiary hearing. I don't think we can speculate now, at this late date, that what they showed us at the evidentiary hearing is not the best that they could do and that there was something better out there that I then have to prove that it would not have been prejudicial to omit that. That's fair. I've run out of time, so for the reasons we've stated, we would ask that the Court affirm the District Court. Thank you. You have, I believe, four minutes left. Mr. Turner? Yes, thank you, Your Honor. First of all, just picking up on a few of the matters which were raised by the State, in terms of the source of information for the complaining witness, other information that was available that was demonstrated at trial is that, in fact, she had, with her siblings, watched X-rated videos. So she certainly had a basis for knowledge about sexuality and the knowledge about how there could be wetness. So it's not accurate to say that there was no other source of that information. I think that also that earlier in the argument when the Court was pointing out that a motion to eliminate might well have been ruled in favor of the defendant under 352, that certain information that would be sought to be introduced would be more prejudicial than probative. That certainly was, in fact, part of my argument notes that I just didn't get a chance to mention. But that, indeed, could have been a basis for that type of argument. While I was sitting down just for a moment on the standard of review, just looked at Killian again, and I think that some of the language from Killian is particularly appropriate here, where this Court said, having refused Killian an evidentiary hearing, the State cannot now argue that the normal AEDPA deference is owed the factual determinations of the State court. So, clearly, this is very similar. But this is the hard part. I mean, is this a factual determination? It's a question of whether the district court would or wouldn't, the superior court would or wouldn't have granted an emotional limiting and whether it was a reasonable decision to forego asking for one. Is that a factual determination? Well, is that a factual determination? God, I don't, you know, that is a difficult question. That determination was, whether factual or legal, was never made by the Court below. That we do know. That was never. By the Court below or by the State court? I'm sorry. It was never made by the Court of Appeals. Because they never got into it at that level of detail. Exactly. Exactly. I think that in terms of. If we rule in your favor, or in your client's favor, rather, in this case, are we basically setting a standard in all sexual, child molestation cases, that the failure to get an expert is a violation of Strickland? Just let me complete the question. To at least pursue, at least hire an expert, get a report, and see how it looks, and then, if necessary, file a motion to eliminate to keep out bad evidence or whatever. That if you have a child molestation case, it's per se a violation not to get an expert. It sounds to me like that's what you're really asking us to do. Obviously, you're not asking us to write a rule for all cases. You would like to have your client win. But I really have a hard time coming up with something that distinguishes this case from any other case. And let's say, you know, this was a question I asked the Court of Counsel that he didn't want to sort of get into. Let's say the reasons we, that the lawyer gives us are not all that persuasive. Let's say we're not persuaded by it. And can't we just say, well, look, that's still a matter of discretion, still a matter of judgment. Let's say the particular reasons he's picked or he's given right now are not all that persuasive. Still, lawyers have a broad discretion under Strickland, and it is not always the case that you need to get an expert. Are you really saying, yes, it is, unless you have a very good reason not to get an expert. You're saying that to do so is a violation of Strickland. Well, on the facts of this case, where there was no physical evidence of molestation, where the, where this is a... But the case where there is physical evidence of molestation, you need the expert evidence even more. It seems to me that the stronger the State's case, the more you will say, gee, at least you could have had an expert to tell us he's the wrong guy or he's not the kind of guy. Let's say you had penetration here, or evidence of penetration, then you would certainly want to say that this wasn't the guy. It must have been the stepfather, it must have been somebody else, and therefore having expert testimony saying my guy is not the guy is even more important. I can't imagine, given your argument, that there would ever be a child molestation case where we wouldn't say, you've got to get an expert, and failure to get an expert, unless you have a very, very, very good reason that we buy, is per se a Strickland violation. Well, at a minimum, you've got to, you've got to evaluate this as a possibility. And that's not, that's what wasn't even done in this case. Other than... This was done. That's your real problem. He's got a handout. All he has is a handout that he got at a CLE. And this goes to the kinds of questions that Judge Kuczynski has been asking. He specifically testified that he did consider it. That's your problem. It's not just that he had a handout. It's that he said, yes, I considered it. But without any, but it wasn't a well-informed consideration. What he also indicated is that he, of, I think he had four, in his years of experience, he had four sexual molest cases that went to trial. That's it. There was no evidence that in any of those he presented, stole, stole... But this whole... Right? So we have to get by that, it seems to me. And we have to say, did he consider it appropriately, i.e., did he do enough investigation to meet his trickling standard, not did he... But we can't now come back and say, oh, he's lying. He really didn't consider it at all. Well, I guess it's the level of consideration. Sure, the district court has already ruled that he considered it. But if it's not really a well-informed decision to say that, well, there was some consideration, if it doesn't reach to the level of being a well-informed decision, then it shouldn't satisfy Strickland. I mean, you're certainly not arguing for a per se rule because, at a minimum, somebody who had prior child molestation background, you certainly wouldn't do this in, and there may be other circumstances. I'm certainly not arguing for a per se rule. Well, I don't see why that's the case. You would say you at least want to get the expert and see what the expert says. The expert may come up with a perfectly good explanation why the earlier conduct doesn't bear on this conduct because it's so different. I mean, I know you want a narrow rule that applies to your client, but I just don't see the limits. I don't see where... Well, it sounds to me like unless a lawyer comes up with a dead-banging reason for not doing it, that we buy, and I grant you the reasons here are not all that great. There's no discretion. There's no lawyer's discretion. You've got to get an expert and at least see what the report looks like. That's what I think you're saying. In certain types of cases, there's going to have to be a strong preference towards doing that. It would just be like in a capital case not engaging in any mitigation. In certain cases, yes, there are going to have to be at least certain types of efforts. There's a little bit of reference because mitigation is an actual stage of the process, whereas having... I mean, in a sense, you're sort of raising the expert report in a case like this almost like mitigation. In a capital case, you're saying this is sort of a required thing that lawyers... Maybe that's a correct answer. I don't know. But I'm in very trouble sitting here in federal court and coming up with per se rules for what defense lawyers need to do in particular classes of cases. Well, I'm not asking the court to go to that point, but I'm saying that I do think that it's on the facts of this case and if there are cases that have facts that are similar, very weak. Why about the ‑‑ just one last question. There was one more reason that the lawyer gave that we didn't talk about, which was this battle of experts problem. And as I understand, to put the best light on what he was saying, it's that the CAS testimony is going to come in and I'm going to have to spend my time debunking the psychologist. And then if I turn around and put on my own psychologist, I'm going to undermine that. And as between debunking an affirmative psychologist and putting on my own affirmative psychologist, I think the latter is more important. Now, what's wrong with that explanation? The assessment that's made about the relative strength or weakness of the theories. He made an assessment that the theories that underlie CSAAS testimony are a stronger or more developed field of psychology and stole evidence is less so. But there's no evidence in the record to demonstrate that he has the ability to make those assessments. And so that's the problem with that type of analysis that he made is that it wasn't a well‑informed analysis because he didn't have the background to make the analysis. And moreover, there were other experts that he was ‑‑ he needed to debunk other experts as well. He had to establish ‑‑ But I understood him to be saying just discreetly about psychological testimony and without regard to its strength, that we need to be taking a consistent position with regard to whether psychologists are worth anything. And that otherwise it's just going to confuse the jury. Even if I could make a distinction of that kind, it's going to get by the jury. So I understand. But to me, that's an odd worry because it suggests that juries cannot be discerning enough to recognize that psychology as an entire field of endeavor might very well be worth it, despite the fact that certain aspects of it are not. So it just sounded, again, like a sort of post‑hoc self‑serving rationalization for ineffective assistance. So I know my time is up. Thank you very much. Thank you. Cases are submitted.
judges: Kozinski, Graber, Berzon